UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLAVIANO A.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. 2:20-cv-06380-JC <br><br> MEMORANDUM OPINION AND ORDER OF REMAND |

**I.   SUMMARY**

On July 17, 2020, plaintiff Flaviano A. filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion") (collectively "Motions"). The Court has taken the Motions under submission

---

[1] Plaintiff's name is partially redacted to protect his privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; Order Lifting Stay; Case Management Order filed on December 14, 2020, at ¶ 3.

    Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.  In this case, the Administrative Law Judge ("ALJ") materially erred by rejecting a treating physician opinion without providing adequate reasons.

**II.**    **BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

    In November of 2016, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning on February 9, 2016, due to depression, ruptured/bulging/degenerative discs, sciatica nerve pain, night terrors, severe anxiety, and limb numbness and swelling. (Administrative Record ("AR") 209-16, 245).  Plaintiff filed a subsequent application for Supplemental Security Income on April 13, 2017.  (AR 218-26). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert.  (AR 41-66).

    On June 27, 2019, the ALJ determined that plaintiff was not disabled through the date of the decision.  (AR 23-36).  Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments:  obesity, lumbar and cervical degenerative disc disease with cervical radiculopathy, strain/sprain of the bilateral knees, lower back, neck and bilateral shoulders, post traumatic stress disorder ("PTSD"), and depressive disorder (not otherwise specified) (AR 25); (2) plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment (AR 26-28); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b),

///

///

416.967(b)) with additional limitations[2] (AR 28-34 (adopting capacity consistent with internal medicine consultative examiner's opinion at AR 429-34));
(4) plaintiff could not perform his past relevant work (AR 34); and (5) plaintiff was capable of performing other jobs in significant numbers in the national economy and therefore was not disabled (AR 35-36). In so finding, the ALJ reportedly gave little weight to the opinion of treating physician Dr. Samuel Chan, who opined that plaintiff would have the capacity for a severely restricted range of sedentary work which would essentially render plaintiff disabled. (AR 33). The ALJ also found plaintiff's subjective statements and testimony not fully supported by the objective evidence given plaintiff's activities of daily living, assertedly conservative treatment, inconsistencies between his statements and the medical record, and the ALJ's observations of plaintiff during the hearing. (AR 31-33).

The Appeals Council considered additional evidence including a letter from Dr. Chan dated February 11, 2020, which the Appeals Council did not exhibit (and is not in the record), and on May 19, 2020, denied plaintiff's application for review. (AR 1-4).

### III. APPLICABLE LEGAL STANDARDS

#### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by

---

[2]The ALJ determined that plaintiff would be limited to: (1) occasional stooping, kneeling, crouching, crawling, and climbing; (2) frequent handling and fingering; (3) avoiding concentrated exposure to loud noise, unprotected heights, and fast-moving unprotected machinery; and (4) being off task five percent of the workday due to exacerbation of signs and symptoms of plaintiff's PTSD and bipolar disorder (AR 28).

regulation on other grounds; 20 C.F.R. §§ 404.1505(a), 416.905. To be considered disabled, a claimant must have an impairment of such severity that he is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy. Id.

**B.  Federal Court Review of Social Security Disability Decisions**

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard of review in disability cases is "highly deferential." Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted). Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision. Trevizo, 871 F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it must be

affirmed if the error was harmless. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted). When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

**IV.   DISCUSSION**

Plaintiff claims that the ALJ erred by improperly rejecting Dr. Chan's treating physician opinion and plaintiff's subjective statements and testimony. (Plaintiff's Motion at 5-17). For the reasons stated below, the Court finds that the

5

ALJ materially erred in rejecting Dr. Chan's opinion without sufficient reasoning. Since the Court cannot find that the error was harmless, a remand is warranted.

### A. Pertinent Law

In Social Security cases, the amount of weight given to medical opinions generally varies depending on the type of medical professional who provided the opinions, namely "treating physicians," "examining physicians," and "nonexamining physicians." See 20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a), 416.927(c)(1)-(2) & (e), 416.902, 416.913(a); Garrison, 759 F.3d at 1012 (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). In turn, an examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted).

A treating doctor's opinion, however, is not necessarily conclusive as to either a physical or mental condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). An ALJ may reject the uncontroverted opinion of a treating source by providing "clear and convincing reasons that are supported by substantial evidence" for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Where a treating source's opinion is contradicted by another doctor's opinion, an ALJ may reject such opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted).

///

An ALJ may provide "substantial evidence" for rejecting such a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)) (quotation marks omitted).[3]

### B.   Summary of the Relevant Medical Record

Dr. Samuel Chan of Coast City Medical Group treated plaintiff from as early as July of 2010 through at least February of 2019.  (AR 329, 940).

Plaintiff initially reported suffering a work injury and having been in a car accident where he was ejected from the car in 2014, which caused a ruptured disc and sciatic nerve damage.  (AR 330).

A July, 2010 x-ray of plaintiff's lumbar spine that was provided to Dr. Chan reports degenerative disc disease at L4-L5.  (AR 329).  Dr. Chan ordered a lumbar spine MRI to rule out L4-L5 "HNP" (herniated nucleus pulposus).  (AR 331-33). A September, 2010 MRI study showed L2-L3 mild ligamentous hypertrophy with no obvious neural impingement, L3-L4 mild facet hypertrophy and diastasis with Grade 1 posterior spondylolisthesis and no obvious neural impingement, L4-L5 degenerative disc disease with annular bulge-osteophyte complex suggesting a Grade 3 annual tear at the central posterior margin with mild facet hypertrophy and diastasis and Grade 1 posterior spondylolisthesis with moderate narrowing of the lateral recesses and neural foramina bilaterally, L5-S1 degenerative disc disease with central posterior protrusion, mild facet hypertrophy and diastases with

---

[3]For claims filed after March 27, 2017, new regulations govern the evaluation of medical opinion evidence which eliminated the term "treating source," as well as the rule previously known as the treating source rule or treating physician rule, which required special deference to treating sources. See 20 C.F.R. §§ 404.1520c, 416.920c; Natalie E. v. Saul, 2020 WL 6545860, at *3 n.4 (C.D. Cal. Nov. 6, 2020); Martha R.L. v. Saul, 2020 WL 1140433, at *3 n.6 (C.D. Cal. March 9, 2020); Alonzo v. Commissioner, 2020 WL 1000024, at *3 (D. Ariz. March 2, 2020); see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).  In this case, because plaintiff originally filed his claims before March 27, 2017, the ALJ did not apply the new rules.

moderate lateral recess and neural frontal narrowing bilaterally, and a probable small hemangioma in the S1 vertebral body. (AR 336-38).

The next available record is in 2016.[4] In June of 2016, Dr. Chan completed a "Return to Work" form indicating that plaintiff would be disabled until August of 2016. (AR 420). In December of 2016, Dr. Chan completed a "Work Status" form indicating that plaintiff was disabled from work until "retired." (AR 486). In September of 2018, Dr. Chan completed a "Work Status" form indicating that plaintiff was disabled with no explanation. (AR 450).

Throughout plaintiff's treatment with Dr. Chan from June of 2016 through February of 2019, plaintiff reported middle and upper back pain, sciatic pain radiating to his feet, right hand numbness of varying intensity and, in later visits, also low back, elbow, knee, ankle, foot, and hip pain. See AR 423 (June, 2016 note); AR 412, 416 (July, 2016 notes); AR 409 (August, 2016 note); AR 400, 404, 583 (September, 2016 notes); AR 390, 395 (October, 2016 note); AR 616 (November, 2016 note); AR 387, 464, 485 (December, 2016 notes); AR 382, 443, 577 (January, 2017 notes);[5] AR 376, 454, 594 (March, 2017 notes); AR 457 (April, 2017 note); AR 504 (October, 2017 note); AR 487 (December, 2017 note); AR 514 (January, 2018 note); AR 510, 539 (March, 2018 notes); AR 522, 573 (April, 2018); AR 568 (May, 2018 note); AR 497, 518 (July, 2018 notes); AR 528 (August, 2018 note); AR 449, 589 (September, 2018 notes); AR 949 (December,

---

[4]In March of 2017, plaintiff submitted some records from Dr. Chan's office but indicated that the file included over 1,000 pages, so plaintiff chose to include evidence from when plaintiff started seeing Dr. Chan in 2010 and records more current to March of 2017. (AR 327). The record contains several duplicate copies of Dr. Chan's records in Exhibit 6F. (AR 441-860). Plaintiff reportedly submitted 50 pages of records from Dr. Chan for the period from May 6, 2013, to April 24, 2019, but the Appeals Council did not exhibit those records. (AR 2).

[5]In January of 2017, Dr. Chan ordered a left knee MRI for internal derangement to rule out Baker's cyst and meniscal tear. (AR 441-42). There is no report of a knee MRI in the record.

2018 note); AR 936 (January, 2019 note); AR 940 (February, 2019 note). At almost every visit, Dr. Chan reported objective findings which are handwritten and difficult to read but appear to reference plaintiff's "LS" (lumbar spine) tenderness. See AR 376, 382, 387, 390, 395 (also reporting bilateral knee tenderness), 400, 404, 409, 412, 422, 423, 443 (also reporting swollen/tender knees), 449, 454, 457, 464, 485 (also reporting knee swelling/tenderness and positive right side "SLR" (straight leg raising)), 504, 510, 514 (also reporting positive right side SLR), 518, 522, 528, 568 (also reporting positive right side SLR), 573 (also reporting positive right side SLR), 577, 583, 589, 594, 936. The December, 2018 treatment note also reports objective findings of left wrist positive Finkelstein test and pain with range of motion, cervical spine spasm, tenderness, positive Spurlings, and decreased range of motion, and lumbar spine sciatica and pain with range of motion. (AR 949). The February, 2019 treatment note reports lumbar spine findings of spasm, tenderness, decreased range of motion, sciatica, and mild antalgic gait, and cervical spine findings of spasm, tenderness, decreased range of motion, and other findings that are illegible. (AR 940).

Dr. Chan consistently prescribed, *inter alia*, MS Contin (morphine sulfate), Percocet, Caridoptofol (Soma), Tylenol with Codeine, and Hydrocodone (Norco). (AR 343-75, 378-94, 396, 398-99, 401-03, 405-08, 410-15, 417-19, 421, 442, 445, 448, 451-52, 456, 459-63, 489, 491-95, 499, 501, 503-04, 507-10, 513, 517, 520-21, 525-26, 530-31, 533, 535, 539, 571-72, 576, 579, 582, 586, 588, 592, 603, 619, 938, 942, 944, 946-48, 951).

Dr. Chan completed a "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" form dated August 30, 2017. (AR 559-61). Dr. Chan indicated that plaintiff could occasionally and frequently lift and carry 10 pounds, stand and walk less than two hours in an eight-hour day, sit about two hours in an eight-hour day, sit for 15 minutes before needing to change positions, stand for 10 minutes before needing to change positions, must walk around every 30 minutes

for 10 minutes, must need to shift from sitting or standing/walking at will, will need to lie down at unpredictable intervals during a work day, and can never twist, crouch, climb stairs or ladders, and occasionally stoop. (AR 560-61). Dr. Chan based the limitations on plaintiff's lumbosacral muscle spasm with pain, and numbness in the legs and hands with weakness. (AR 561). Dr. Chan indicated that plaintiff would have limitations with reaching handling, feeling, and pushing/pulling due to plaintiff's back pain as supported by MRI and x-ray studies. (AR 561). Dr. Chan also indicated that plaintiff must avoid all exposure to extreme cold, heat, wetness and hazards, and avoid moderate exposure to humidity, noise and fumes, odors, etc. (AR 559). Dr. Chan explained that cold/heat/wetness causes back pain and hand numbness, noise causes anxiety, poor ventilation causes dizziness, and hazards are dangerous to plaintiff's health. (AR 559). Dr. Chan indicated that plaintiff would need to elevate his legs to reduce stretching on his back which causes pain. (AR 559). Dr. Chan indicated that plaintiff would miss more than three days of work per month due to his condition. (AR 559).[6]

### C.  Analysis

The ALJ's decision lacks sufficiently specific and legitimate reasons supported by substantial evidence for rejecting Dr. Chan's opinion. The ALJ considered Dr. Chan's opinion that plaintiff has a capacity for "severely restricted" sedentary work but gave "little weight" to the opinion as: (1) brief, conclusory,

---

[6]Prior to Dr. Chan's opinion, consultative examiner Dr. John Sedgh had prepared an Internal Medicine Consultation dated January 23, 2017, opining that plaintiff would be capable of light work with occasional postural activities consistent with the residual functional capacity the ALJ found to exist. (AR 429-34). Dr. Sedgh reviewed no medical records but did review spine and knee x-rays showing moderate discogenic disease at L4-L5 with spurring and possible stenosis, and soft tissue swelling in the knees. (AR 429, 435-36). On examination, plaintiff was 311 pounds, had reduced grip strength of 15 and 10 pounds, limited range of motion in the cervical and lumbar spine, shoulders, and knees, and a slightly antalgic gait with dragging of the left leg. (AR 430-33). Dr. Sedgh diagnosed lower back, knee, shoulder and neck sprain/strain based on plaintiff's subjective complaints, limited range of motion and gait. (AR 433).

and inadequately supported by the objective findings, where Dr. Chan's treatment notes purportedly summarized plaintiff's subjective complaints and treatment without providing medically-acceptable clinical or diagnostic findings supporting the assessment; and (2) assertedly inconsistent with Dr. Chan's own treatment records which reportedly documented routine and conservative treatment and benign objective findings. (AR 33).

With respect to the first reason, this can be a specific and legitimate reason supporting an ALJ's determination to discount a medical opinion. See Burrell v. Colvin, 775 F.3d 1133, 1140 (9th Cir. 2014) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings") (citation omitted); Houghton v. Comm'r of Soc. Sec. Admin., 493 Fed. Appx. 843, 845 (9th Cir. 2012) (holding that ALJ properly discounted medical opinions that were "internally inconsistent, unsupported by [the doctors'] own treatment records or clinical findings, [and] inconsistent with the record as a whole"). However, as detailed above, in the available record Dr. Chan did note objective findings, albeit cursorily, and Dr. Chan also had reviewed plaintiff's 2010 x-rays and MRI study.

The ALJ's inaccurate characterization of the medical evidence calls into question the validity of both the ALJ's evaluation of the medical evidence and the ALJ's decision as a whole. See Regennitter v. Comm'r of Soc. Sec. Admin, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support ALJ's decision); see also Reddick, 157 F.3d at 722-23 (error for ALJ to paraphrase medical evidence in manner that is "not entirely accurate regarding the content or tone of the record"). Additionally, if the ALJ felt the need to know the objective basis for Dr. Chan's opinion (apart from Dr. Chan's reference to MRI and x-ray studies and ), the ALJ could have sought clarification from Dr. Chan. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to now the basis of Dr.

Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them. He could also have continued the hearing to augment the record.") (citations omitted).

With regard to the second reason, the treatment Dr. Chan provided which included consistently prescribing pain medications like MS Contin, Percocet, Soma, Tylenol with Codeine, and Norco. It is doubtful that plaintiff's treatment with narcotic pain medications may properly be characterized as "conservative" within the meaning of Ninth Circuit jurisprudence. See, e.g., Shepard v. Colvin, 2015 WL 9490094, at *7 (E.D. Cal. Dec. 30, 2015) ("[p]rior cases in the Ninth Circuit have found that treatment was conservative when the claimant's pain was adequately treated with over-the-counter medication and other minimal treatment," however where record reflected heavy reliance on Tramadol and Oxycodone and other prescriptions for pain, record did not support finding that treatment was "conservative") (internal citations omitted; citing for comparison Lapeirre-Gutt v. Astrue, 382 Fed. App'x. 662, 664 (9th Cir. 2010) (doubting whether "copious amounts of narcotic pain medication" as well as nerve blocks and trigger point injections was "conservative" treatment)); Childress v. Colvin, 2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014) ("[i]t is not obvious whether the consistent use of [Norco] (for several years) is 'conservative' or in conflict with Plaintiff's pain testimony"); Aguilar v. Colvin, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong narcotic pain medications"). As detailed above, plaintiff regularly sought treatment with Dr. Chan throughout the alleged disability period, and consistently was prescribed more than one narcotic pain medication. Contrary to the ALJ's assertion, it appears that plaintiff's treatment has not been "conservative" within the meaning of Ninth Circuit jurisprudence.

///

Accordingly, a remand is warranted so that the ALJ can reevaluate the medical opinion evidence.[7]

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is REVERSED in part, and this matter is REMANDED for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: April 28, 2021

                                                /s/
                                  Honorable Jacqueline Chooljian
                                  UNITED STATES MAGISTRATE JUDGE

---

[7] The Court has not reached any other issue raised by plaintiff except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.